OMAHA HARDWARE CO. v. DUNCAN & JEFFRIES.

[FILED JANUARY 20, 1891.]

Fraudulent Conveyances: ATTACHMENT.  The defendants
were engaged in the mercantile business and were indebted to
the plaintiff in the sum of $708.76.  Soon after this debt be-
came due they executed a chattel mortgage on their entire stock
of goods, fixtures, safe, etc., to the father of one of the defend-
ants and an uncle of the other, then residing in Iowa, to secure
the sum of $2,217.82.  This mortgage was made in the absence
of the mortgagees, apparently without their knowledge or ac-
ceptance, and was filed for record on the day it was made.  An
attachment was thereupon levied upon the goods of the defend-
ants, who, to sustain the mortgage, filed an affidavit stating that
said mortgage was given to secure a valid indebtedness from
these defendants to said W. H. Butler and Edmund Jeffries of
$2,217.82.  Held, That to sustain the mortgage the facts should
have been alleged showing how and for what the indebtedness
was incurred, and that in the absence of such showing the proof
was not sufficient to establish the fact that the mortgage was
bona fide.

ERROR to the district court for Adams county.    Tried
below before, GASLIN, J.

Kennedy, Learned & Barnard, and Bailey & Cunning-
ham, for plaintiff· in error, cited: Turner v. Killian, 12
Neb., 581; Ahlman v. Meyer, 19 Id., 65; Bullis v. Drake,
20 Id., 170; Davis v. Scott, 22 Id., 155; Jones, Chat.
Mort. [2d Ed.], sec. 104; Miller v. Blinebury, 21 Wis.,
676; Welch v. Sackett, 12 Id., 70; Day v. Griffith, 15 Id.,

104; *Cobb v. Chase,* 54 Id., 253; *Hedman v. Anderson,* 6 Neb., 400; *White v. Woodruff,* 25 Id., 797.

*Tibbets, Morey & Ferris, contra,* cited: *Blakeslee v. Rossman,* 43 Wis., 124; Wade, Attachment, secs. 96, 97, 203, 208, 209; *Rosenfeld v. Howard,* 15 Barb. [N. Y.], 546; *Clark v. Tennant,* 5 Neb., 557; *Clemens v. Brillhart,* 17 Id., 337; *Brown v. Herr,* 21 Id., 128; *Connelly v. Edgerton,* 22 Id., 84; *Grimes v. Farrington,* 19 Id., 45; *Peckinbaugh v. Quillin,* 12 Id., 586; Jones, Chat. Mort. [4th Ed.], secs. 49, 340, 356, and p. 556; *Eggleston v. Mundy,* 4 Mich., 295; *Hilton v. Ross,* 9 Neb., 406; *Ellison v. Tallon,* 2 Id., 14; *Steele v. Dodd,* 14 Id., 496; *Olds Wagon Co. v. Benedict,* 25 Id., 375; *Davis v. Scott,* 22 Id., 157; *Turner v. Killian,* 12 Id., 580; *Nelson v. Garey,* 15 Id., 531; *Lininger v. Raymond,* Id., 19; Id., 580; *Chouteau v. Sherman,* 11 Mo., 385; Bump, Fraud. Conv. [3d Ed.], 603 and cases.

Maxwell, J.

The plaintiff brought an action against the defendants, by attachment in the county court of Adams county, to recover the sum of $708.75 for goods, wares, and merchandise sold and delivered by the plaintiff to the defendants. The attachment was sought on the ground that the defendants "are about to convert their property or a part thereof into money for the purpose of placing it beyond the reach of their creditors, and have assigned, removed, or disposed of, or are about to dispose of, their property, or a part thereof, with the intent to defraud their creditors, and are about to remove their property, or a part thereof, out of the jurisdiction of the court with the intent to defraud their creditors."

The defendants filed a motion to dissolve the attachment, and in support thereof filed their joint affidavit denying the grounds stated in the petition, etc.

The plaintiffs, to sustain their attachment, filed certain affidavits, and on the hearing the attachment was dissolved and the property released.

The case was taken on error to the district court, where the judgment of the county court was affirmed.

It appears from the record that on the 2d day of October, 1889, the defendants were engaged in the mercantile business at Pauline, in Adams county; that on that day they executed a chattel mortgage to W. H. Butler and Edmund Jeffries upon "our entire stock of merchandise, including and consisting of dry goods, groceries, queensware, and hardware; also, all fixtures, consisting of three show cases, one chandelier, one stove, all shelving, four counters, three pair scales, one Mosler & Bahman safe; all of said goods, fixtures, etc., are now owned by us, and being in a frame store-room on lot 15, block 3, in Pauline, Adams county, Nebraska; the mortgagors to remain in possession of said goods, etc., and to sell the same at retail or wholesale and apply the proceeds to the satisfaction of the debt secured by this mortgage." The mortgage was filed for record on the same day. It purports to be security for the sum of $2,217.82 as evidenced by six promissory notes. The mortgagees, nor any of them, were present when the mortgage was executed, nor does the proof before us show any acceptance thereof on their part, or that it was filed with their knowledge or consent.

In support of the attachment the affidavit of one M. L. Learned was filed, in which he says "that about 12:30 A. M., Friday, October 4, 1889, he had a conversation with W. J. Jeffries, a member of Duncan & Jeffries, above named defendants, at the store of said Duncan & Jeffries in Pauline, Nebraska; that this affiant asked said Jeffries if said Duncan & Jeffries had not given a mortgage on their entire stock of merchandise and fixtures situate in their store-room in Pauline, and said Jeffries in reply said that the firm of Duncan & Jeffries had, on October 2, given

to W. A. Butler and Edmund Jeffries a mortgage for
$2,217.82, and the said Jeffries further stated in said con-
versation that Edmund Jeffries, one of the mortgagees,
was his father, and that W. H. Butler, the other mort-
gagee, was his partner, Duncan's uncle; that his father
had not been in Pauline for more than two months prior
to giving the mortgage, and that Butler had not been there
for some time prior to the giving of the mortgage.

"Jeffries further said to this affiant that neither of the
mortgagees were present when the mortgage was given,
and that the mortgagees never had been in possession of
the stock at all, but that he and Duncan had continued in
possession just as before the mortgage was given, and were
conducting the business in just the same manner as before
the mortgage was given. In answer to the question of
this affiant as to why he gave such a mortgage, he said
that they gave the mortgage to prevent any creditor
from levying on the stock and selling it out at forced
sale, as in that way it would not bring what it was
worth. During the conversation between this affiant
and Jeffries, Jeffries stated that the traveling man of the
above named plaintiff promised them eight months' time
in which to pay for the goods ordered, but when asked by
this affiant if the partner Duncan had not been to see the
Omaha Hardware Company, at Omaha, and upon stating
there that the traveling man had promised them eight
months' time, was told that the Omaha Hardware Com-
pany never gave more than thirty or sixty days' time to
any one, and that the traveling man had no authority to
promise more than thirty or sixty days, and that Dun-
can was told if that order was filled, or they bought goods
of the company, it must be with the understanding that
they were to pay in thirty or sixty days and that the order
would only be filled with that understanding. In reply to
this question Jeffries said, in substance, ' Yes, he supposed
that the debt was due and that he would go down to

Omaha on the morning train and fix it up.' During the said conversation Jeffries did not once claim that the debt was not due until February. Jeffries stated to the affiant that his partner Duncan was the postmaster at Pauline, and pointed out to this affiant the part of the store used as a postoffice."

This witness is corroborated in his principal statements by a number of others.

In support of the motion to discharge the attachment the defendants made the following affidavit :

" W. E. Duncan and W. R. Jeffries, being duly sworn, each for himself deposes and says that they are the defendants in the above entitled action; that neither of the defendants herein, or the firm of Duncan & Jeffries, is as yet indebted to the plaintiff in any sum whatsoever ; that the said sum set out in plaintiff's petition as being due from the defendants Duncan and Jeffries is not yet due, but, on the contrary, will not be due for about the space of four months from this date ; that the goods purchased from the plaintiff by defendants, for the payment of which plaintiff claims the said sum of $708.76 as now due and owing from defendants to plaintiff, were purchased by defendant from the agent of plaintiff on or about the 10th day of June, 1889, and it was then and there stipulated and agreed to by and between these defendants and said agent for plaintiff, one A. A. Melanson, that these defendants were to have eight months from said 10th day of June, 1889, in which to pay for said goods so purchased, and that said sum will not be due till on or about the 10th day of February, 1890.

" "Affiants further say, that they are not about to convert their property, or any portion thereof, into money for the purpose of placing it beyond the reach of their creditors, or that they have assigned, removed, or disposed of, or are about to dispose of, their property, or any portion thereof, with intent to defraud their creditors, or about to remove

their property, or any part thereof, out of the jurisdiction of the court with intent to defraud their creditors.

"Affiants further say that on the 2d day of October, 1889, they made, executed, and delivered a certain chattel mortgage to W. H. Butler and Edmund Jeffries on the stock of goods contained in the store building situate on lot 15, block 3, in Pauline, Adams county, Nebraska, being the same stock of goods taken under an order of attachment issued in this cause; that said mortgage was given to secure a valid indebtedness from these defendants to said W. H. Butler and Edmund Jeffries of $2,217.82, and that it is provided in said chattel mortgage that these affiants were to remain in possession of said goods and sell the same at public or private sale and apply the proceeds of such sales in liquidation of the said sum of $2,217.82 so secured; that said mortgage was filed in the office of the county clerk of Adams county, Nebraska, on the 2d day of October, 1889, and these defendants have in all respects fulfilled the conditions of said chattel mortgage."

This is substantially all the testimony upon the hearing for dissolution of the attachment, and it was insufficient for that purpose.

The chattel mortgage, if valid, withdrew the property of the defendants from levy and sale upon either an attachment or execution. The circumstances under which this mortgage was made were such as to require proof from the mortgagees as to the actual consideration paid by them to the defendants. In other words, how was the debt incurred, and for what? These questions are not answered by the allegation of the defendants that the debts were *bona fide*. They should have stated the facts in regard to the creation of the debt, and a consequent giving of security for the same, and the court would have drawn conclusions of law from such facts. On the face of the papers, therefore, unless this mortgage was a *bona fide* transaction, there was an attempt on the part of the defendants to place their

property beyond the reach of their creditors, which would fully justify an attachment.

The claim that the debt was not due does not appear to be well taken, as the proof clearly shows that it was due. If the proof clearly showed that the goods had been sold upon eight months' credit, we are not prepared to say that an action brought before that period had elapsed could be maintained; in other words, a party selling goods by an agent, in approving a contract made by such agent must adopt the same as a whole, and not that part alone which is beneficial and reject that which is detrimental. The proof, however, clearly shows that the goods were sold on not to exceed sixty days' time, and the defendants evidently so understood.

There is some testimony in the record tending to show that the defendants are young men of good character, although one of them seems to be somewhat inexperienced in the business. Whatever their ultimate aims may have been in regard to paying their debts, it is evident they made a mistake in attempting to cover up their property. Honesty and fair dealing require good faith on the part of debtors as well as creditors, and a chattel mortgage or other security made to cover up property but opens the way for its application to the payment of attaching creditors.

The judgment of the district court is reversed, the attachment reinstated, and the cause remanded for further proceedings.

JUDGMENT ACCORDINGLY.

THE other judges concur.